2020 PA Super 8

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS MATTHEWS | : | |
| | : | |
| Appellant | : | No. 161 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 20, 2015
In the Court of Common Pleas of Crawford County Criminal Division at
No(s):  CP-20-CR-0001114-2013

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.:                **FILED JANUARY 17, 2020**

Curtis Matthews appeals from the judgment of sentence imposed following his convictions for fleeing or attempting to elude police officer, driving under the influence of alcohol ("DUI") – general impairment, and DUI - refusal of blood testing.[1] We vacate Matthews' conviction for DUI - refusal of blood testing and remand for resentencing. We affirm on all other issues.

Matthews represented himself at his 2015 jury trial, at which the Commonwealth presented evidence that an on-duty police officer saw Matthews, while driving an SUV, fail to stop at a stop sign. The officer pulled over Matthews' vehicle, but as the officer was calling in the numbers on Matthews' registration plate, Matthews drove away. Thus commenced a five-mile, high-speed chase during which Matthews failed to stop at several stop

_____

[1] **_See_** 75 Pa.C.S.A. §§ 3733(a.2)(2), 3802(a)(1), and 3803(b)(2) (previous version, eff. Oct. 27, 2014).

signs and a red light, drove in the lane of oncoming traffic, failed to signal, and nearly struck other vehicles. When Matthews finally stopped, the arresting officers noted alcohol on Matthews' breath, and observed him having difficulty in walking and standing. Matthews admitted to having drunk one beer and to having an open container of beer in his vehicle. He refused to have his blood tested for alcohol content.

At the conclusion of trial, the jury convicted Matthews of Count 1, fleeing and eluding. Matthews had waived his right to a jury trial on the other charges, and the court, sitting as fact-finder, convicted Matthews of DUI – general impairment and DUI – refusal of blood testing, at Counts 2 and 3. The court also convicted Matthews of 15 summary traffic offenses.

Matthews was represented by counsel at his sentencing hearing. The court sentenced Matthews to serve 42 to 84 months' incarceration and to pay a $1,000 fine for fleeing or eluding. The court determined that the two DUI convictions—Counts 2 and 3—merged for sentencing purposes, and imposed a single sentence, at Count 2, of three to six months' incarceration and a $1,500 fine.[2] The court ordered that the DUI sentence be served consecutively

_____

[2] The court initially imposed sentence on May 15, 2015, and entered its sentencing order on the docket on May 18, 2015. The court entered an amended sentencing order on May 20, 2015.

to the fleeing and eluding sentence. Matthews filed post-sentence motions, which the court denied, and Matthews appealed.[3]

Matthews raises the following issues:

1. Was it error for the Trial Court to require the physically disabled, 59 year old, *Pro Se* Appellant to appear before the jury in jail garb, shackles and handcuffs?

2. Does the use of two forms that violate the future holdings in ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016)[,] mandate that [Matthews'] conviction be reversed and his enhanced sentence be determined illegal?

3. When Defense counsel, without the consent and outside the presence of the Defendant, discloses to the Court and the Commonwealth confidential communications between the defendant and his attorney intimating that the defendant is guilty, should the court recuse itself *su[a] sponte*?

4. If standby counsel fails to take action necessary for a fair adjudication to take place, is the defendant entitled to a new trial?

---

[3] Matthews was represented by counsel on his direct appeal. This Court dismissed the appeal due to Matthews' failure to file a brief. ***See Commonwealth v. Matthews***, No. 1245 WDA 2015 (filed February 1, 2016) (*per curiam*). Matthews filed a timely petition under the Post Conviction Relief Act ("PCRA"). The PCRA court found Matthews' appellate counsel ineffective and reinstated his direct appeal rights *nunc pro tunc*. Matthews accordingly filed a second direct appeal, but the pattern repeated a second time—this Court again dismissed the appeal for failure to file a brief, ***see Commonwealth v. Matthews***, No. 687 WDA 2017 (filed December 5, 2017) (*per curiam*), and the PCRA court again reinstated Matthews' appeal rights following a timely PCRA petition. After his appeal rights were reinstated the second time, Matthews' counsel failed to file a timely notice of appeal. The PCRA court, having received *pro se* correspondence from Matthews, but no correspondence from counsel, deemed counsel ineffective. The court appointed new counsel, and once again reinstated Matthews' direct appeal rights. Matthews thereafter filed a timely notice of appeal, and, finally, an appellant brief.

5. When Counsel is denied a continuance to fully investigate the prior record of the defendant, is the sentence illegal and an abuse of discretion?

6. Was the sentence illegal because the reason for [sic] given for departing from the guidelines is part the crime[?]

Matthews' Br. at 2 (answers of PCRA court omitted).

## I. Matthews' Courtroom Attire

In his first issue, Matthews claims the court ruled he must appear in court in a prison uniform and wearing either handcuffs and shackles, or a shock belt. Matthews' Br. at 8. Matthews argues he objected to these alleged requirements prior to trial. *Id.* Although he does not quote or cite the trial transcript, Matthews also contends that the court informed the jury, during its opening comments, that Matthews had decided to be restrained, and was wearing a shocking device in order to prevent him from engaging in unsafe conduct. *Id.* at 8-9. Matthews argues that the court's alleged requirements and statements to the jury prejudiced him, as they led the jury to believe he was dangerous. *Id.* at 9. Matthews also asserts the restraints prevented him from reading or taking notes during trial, where he was representing himself, and that the court only ordered that a podium be positioned between him and the jury, which prevented him from seeing the jury. *Id.*

Matthews has waived these issues. Contrary to his current argument, Matthews insisted on wearing his prison uniform during trial, and rejected the court's offer of street clothing. *See* Order, filed 11/7/14, at 1; Order Denying Post Sentence Motions, filed 7/17/15, at 2; N.T. (pretrial conference),

- 4 -

11/7/14, at 43-46, 49.[4] The court ordered that if Matthews changed his mind, he would have access to street clothes. Order, filed 11/7/14, at 1. Matthews does not allege that he changed his mind and requested other clothing, or specify where in the record he may have done so. *See* Pa.R.A.P. 2117(c) (requiring appellant to include in brief manner in which issues were preserved).

While the court required Matthews to comply with the directive of the sheriff's department by wearing either handcuffs and shackles or a shock belt, Matthews does not argue that the court erred in deferring to the safety decisions of the sheriff's department when requiring some form of restraint, or provide any legal argument on this point. *See Commonwealth v. Miller*, 212 A.3d 1114, 1131 (Pa.Super. 2019). According to the trial court, the sheriff's department required these precautions in response to Matthews' multiple prosecutions for assaults upon law enforcement officers, and his "prior disregard of courtroom decorum." *See* Order Denying Post Sentence Motions, filed 7/17/15, at 2. Matthews chose to wear handcuffs and shackles rather than a shock belt, which would have been invisible to the jury. *Id.* at 2-3; *see also* N.T. (pretrial conference), 11/7/14, at 50-52; N.T. (pretrial conference), 3/5/15, at 15-17.

---

[4] In rejecting the offer of street clothing, Matthews said, "No. No. No. No. I want the jury to see the real deal. I'm wearing what I got on. I want them to know I have been in jail seven months about some bullshit, because the police want to play peekaboo at the stop sign." N.T. (pretrial conference), 11/7/14, at 43.

Matthews complains the court caused prejudice when it remarked on his appearance to the jury; however, the transcript of *voir dire* is not included in the certified record. Regardless, in its order denying post-sentence motions, the court quoted the relevant portion of its statements to the jury on this issue, and explained that it raised the issue of Matthews' appearance in order to *voir dire* the potential jurors to ensure no juror would be prejudiced against Matthews by the sight of the prison uniform and restraints. **See** Order Denying Post Sentence Motions, 7/17/15, at 3-4.

Furthermore, by electing to wear handcuffs rather than a shock belt, Matthews waived his argument that the handcuffs prevented him from effective self-representation. It was not until the third day of trial that Matthews requested the handcuffs be removed to allow him "to represent [him]self, shuffle [his] papers better," and "to demonstrate to the jury when [the arresting officer] told [him] to get down on [his] hands and knees[.]" N.T. (Trial), 3/11/15 (Morning), at 19-20. The judge denied the request, stating, "I promised this jury we're going to start at 9:00 . . . . [Y]ou waived that[, and] I can't drop everything now and put a shock belt on you." **Id.** at 20-21. Moreover, the court observed, "I have been watching you throughout this trial, you have been well able to use both of your hands. . . . You have been well able to write." **Id.** at 19-20.

Finally, Matthews does not indicate where in the record he preserved the issue that the location of the podium prevented him from seeing the jury. **See** Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal). At

any rate, the record reflects the court instructed both Matthews and the Commonwealth to stand behind the podium when making argument, examining witnesses, and addressing the jury. *See* N.T. (pretrial conference), 3/9/15, at 2. We therefore fail to see how any relief is due.

## II. *Birchfield*

Matthews next argues that the Commonwealth impermissibly argued, and the court erroneously instructed the jury, that his refusal to submit to blood testing was evidence of his consciousness of guilt. Matthews' Br. at 10. Matthews also argues that he should not have been subjected to enhanced penalties for refusing to provide a blood sample. *Id.*

The first argument warrants no relief. Evidence that a defendant refused to submit to a warrantless blood test is admissible at trial. *See* 75 Pa.C.S.A. § 1547(e); *Commonwealth v. Bell*, 211 A.3d 761, 763-64 (Pa. 2019).

However, we conclude Matthews' conviction for DUI - refusal of blood testing cannot stand. First, a refusal to submit to blood testing, at the time of Matthews' arrest, was not a separate criminal offense, but a fact which enhanced the penalties applicable for violations of the DUI statute, 75 Pa.C.S.A. § 3802. *See* 75 Pa.C.S.A. § 3803(b), *amended* Dec. 24, 2018; 75 Pa.C.S.A. § 3804(c), *amended* Dec. 24, 2018. Even today, evidence of refusal of blood testing still does not constitute a substantive criminal offense, but acts to elevate the grading and enhance the penalties for a DUI conviction. *See* 75 Pa.C.S.A. §§ 3803(b), 3804(c).

Here, the court convicted Matthews at Count 2 of violating Section 3802(a)(1), general impairment. *See* Information, filed 1/9/14. The court also convicted Matthews at Count 3, wherein he was charged with violating the exact same subsection of the DUI statute, but included the allegation that Matthews had refused of blood testing. *See id.* However, Matthews did not commit two distinct DUI offenses, or violate two separate subsections of the DUI statute, and the court therefore erred in convicting Matthews of two counts of DUI. As the error implicates the legality of Matthews' sentence, we hold one of the DUI convictions must be vacated. *See Commonwealth v. Farrow*, 168 A.3d 207, 213, 215-18 (Pa.Super. 2017) (stating issue implicates legality of sentence; vacating duplicative DUI convictions where Commonwealth charged DUI-general impairment as well as two separate counts reflecting sentencing enhancements).[5]

In addition, in the wake of *Birchfield*, we have held that the previous versions of Sections 3803 and 3804 are unconstitutional, insofar as they impose enhanced criminal penalties upon defendants who refused to consent to a warrantless blood test. *See Commonwealth v. Giron*, 155 A.3d 635,

---

[5] That the court only imposed one sentence on the two counts does not remedy that Matthews' criminal record now reflects an extra conviction. *See Farrow*, 168 A.3d at 215-18 (vacating duplicate DUI convictions and remanding for resentencing despite that trial court found DUI convictions merged and imposed only one sentence with "no further penalty" on remaining convictions).

640 (Pa.Super. 2017).[6] Any application of the unconstitutional enhancements renders a sentence illegal. *Id.* As the issue is one implicating the legality of the sentence, it is nonwaiveable. *Commonwealth v. Monarch*, 200 A.3d 51, 56 (Pa. 2019); *see, e.g., Giron*, 155 A.3d at 638 (raising *sua sponte* issue of application of Sections 3803 and 3804 to sentence which was imposed prior to *Birchfield*).[7] We therefore conclude Matthews' conviction at Count 3 for DUI – refusal should be vacated, and the conviction at Count 2 for DUI – general impairment should remain.

As the court imposed a "merged" sentence for Counts 2 and 3, we must next determine whether the court imposed an enhanced sentence based on Matthews' refusal of blood testing. As a first DUI offender, at the time of Matthews' sentencing, his exposure at Count 2, for DUI - general impairment, without considering his refusal, was a mandatory minimum sentence of six

---

[6] Accordingly, the current versions of these statutes only impose enhanced penalties on defendants who refuse to consent either to breath testing, or to blood testing pursuant to a valid search warrant.

[7] In its Rule 1925(a) opinion, the trial court found that Matthews had waived any relief under *Birchfield* by failing to raise the issue before the court prior to Rule 1925(b) statement of errors complained of on appeal. Trial Court Opinion, 3/4/19, at 4. In so finding, the court relied on *Commonwealth v. Moyer*, 171 A.3d 849 (Pa.Super. 2017). However, *Moyer* held that a defendant is not entitled to raise the protections of *Birchfield* for the first time on appeal when the defendant had failed to challenge during trial the admissibility of the results of the blood test. *Moyer*, 171 A.3d at 855. *Moyer* therefore dealt with the implications of *Birchfield* on the admissibility of blood test results at trial, not the legality of a sentence enhanced by the defendant's refusal of blood testing, and *Moyer*'s holding regarding waiver does not apply here.

months' probation and a $300 fine, **see** 75 Pa.C.S.A. 3804(a)(1), and a maximum sentence of six months' incarceration, **see** 75 Pa.C.S.A. § 3803(a)(1).[8] The offense was to be graded as a misdemeanor. **Id.** His exposure at Count 3, for DUI - refusal, was a mandatory minimum of 72 hours incarceration and a $1,000 to $5,000 fine, **see** § 3804(c)(1), *amended* Dec. 24, 2018, and a maximum sentence of six months' incarceration, **see** § 3803(b)(2), *amended* Dec. 24, 2018. With the enhancement, the offense was still graded as a misdemeanor. **Id.** The grading and maximum sentence, therefore, were not increased by Matthews' refusal; both applicable subsections provided his DUI was graded as a misdemeanor, and allowed for a maximum sentence of six months' incarceration. However, under the enhancement, the minimum sentence increased from a mandatory six month's probation to a mandatory 72 hours' imprisonment, and from a $300 fine to a $1,000 to $5,000 fine. The Sentencing Guidelines, both with and without the enhancement, reflected a standard range sentence of a minimum of three months' imprisonment.[9]

The court imposed the "merged" sentence at Count 2. It imposed the standard guidelines sentence of three to six months' incarceration, and a $1,500 fine. On the face of the sentence, therefore, it is impossible to tell whether the term of three to six months' incarceration was influenced by the

_____

[8] The penalties are the same under the current versions of the statutes.

[9] The court found the Sentencing Guidelines categorized Matthews' as a Repeat Felony 1/Felony 2 Offender ("RFEL"). **See** 204 Pa. Code § 303.4(a)(2).

enhanced mandatory minimum. However, the court did impose an enhanced fine. We conclude that the appropriate course of action in this case is to vacate Matthews' judgment of sentence on Count 2 and remand for resentencing, to ensure Matthews is not subject to an enhanced sentence based on his refusal to consent to a warrantless blood test.

As the sentence at Count 2 was consecutive to that at Count 1, we remand for resentencing on both counts, to ensure the court's overall sentencing scheme is not disturbed. *See Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa.Super. 2006). In sum, we vacate Matthews' conviction on Count 3 and remand for resentencing on Counts 1 and 2.

### III. Recusal

Matthews claims that prior to trial, his previous counsel moved to withdraw, and when doing so, had a discussion with the court in which counsel disclosed the contents of a confidential conversation he had had with Matthews. Matthews' Br. at 11. Specifically, according to Matthews, his counsel informed the court he had told Matthews he did not have a defense to the charges, and Matthews had agreed that he had no defense. *Id.* Matthews argues this disclosure constituted a violation of the rules of professional conduct, and the trial judge had a duty to recuse himself. *Id.* at 11-12. Matthews asserts that he did not raise the issue earlier because he was not present during the discussion between the court and counsel, and only became aware of it when reading the transcript of trial. *Id.* at 12.

This claim is waived. A recusal motion must be made clearly and on the record. Otherwise, "the trial judge may fail to engage in the independent analysis and self-reflection necessary to make a cognizable ruling on the motion." ***Commonwealth v. Luketic***, 162 A.3d 1149, 1158 (Pa.Super. 2017). Matthews did not preserve this issue in the trial court, and has not offered any legal authority to support the proposition that the court was responsible to recuse *sua sponte*.

Moreover, according to the trial court opinion, Matthews was advised of the hearing on counsel's request to withdraw, but failed to appear. At the hearing, Matthews' counsel requested to withdraw due to lack of payment. He stated his strategy had been to secure a *nolle prosequi* on drug charges that Matthews had initially been facing, he had been successful in that regard, and Matthews had thereafter agreed to accept a plea deal, as, according to counsel, he "wouldn't have a defense to the other charges." Tr. Ct. Op. at 5 (quoting N.T. (Withdrawal Hearing), 5/23/14, at 7).[10] Counsel related Matthews had since changed his mind, and desired to present a defense through new counsel rather than plead guilty. ***Id.*** Matthews' counsel therefore did not disclose any confidential admission of guilt by Matthews. And, in reviewing this issue, the court explained that the foregoing statements did not influence its decision when finding Matthews guilty on the DUI and traffic

---

[10] Counsel also stated, "[T]hat was always my instructions to him that he would have a very difficult time defending the two other charges and then the multiple summaries in this case and that's where one of the conflicts arise." N.T. (Withdrawal Hearing), 5/23/2014, at 7.

- 12 -

charges. ***Id.*** We therefore conclude that even if Matthews had preserved the issue by making a timely motion for recusal, it would merit no relief.

### IV. Standby Counsel

Matthews next argues that although he cannot raise a claim of ineffectiveness of standby counsel, the court erred in failing to ensure that Matthews' standby counsel adequately assisted him in serving subpoenas on witnesses. Matthews' Br. at 13. Although he does not quote or cite to the record, Matthews claims he repeatedly raised during trial that standby counsel had not been serving the subpoenas Matthews had requested, and the court erred in failing to determine whether or not it was standby counsel's obligation to serve subpoenas on Matthews' behalf. ***Id.***[11]

As Matthews acknowledges, there is no cognizable claim for ineffective assistance of standby counsel. ***See Commonwealth v. Blakeney***, 108 A.3d 739, 749 (Pa. 2014). To the extent Matthews argues that the court somehow thwarted his ability to serve subpoenas by misleading him as to the responsibilities of standby counsel, Matthews has not established that he preserved this issue as a claim of trial court error, rather than as a prohibited claim of standby counsel ineffectiveness.

---

[11] Matthews also argues that standby counsel participated in a sidebar conference without Matthews, which led the jury to believe Matthews was not competently representing himself. Matthews' Br. at 13. Matthews has waived this argument by his failure to raise the issue in his Rule 1925(b) statement of errors. ***See*** Pa.R.A.P. 1925(b)(4)(vii).

- 13 -

Furthermore, Matthews has failed to establish that the claim warrants relief, as Matthews has not asserted that the court interfered with his ability to serve a subpoena upon any specific witness, such that the witness failed to appear for trial. Nor does he argue that any missing witness's testimony would have affected the outcome of the proceedings. Regardless, such an argument would likely fail, as, according to the court, "Matthews was questioned about who he wished to have testify, and [standby counsel] informed the court that, except for one or two of the treating physicians, he had arranged for them all to appear[.]" Tr. Ct. Op. at 7 (footnote and citations to trial transcripts omitted). The court also noted that it had indicated that the testimony of multiple physicians would be cumulative. *Id.* at 7 n.12. We therefore refute Matthews' attempt to reframe a claim of ineffectiveness of standby counsel as a vague claim of trial court error, and deny relief on this issue.

### V. Continuance Request

Matthews argues the court abused its discretion in denying his request to continue his sentencing hearing. Matthews' Br. at 14. Matthews states his counsel requested the continuance in order to investigate Matthews' criminal record, for the purposes of recalculating Matthews' prior record score ("PRS"). *Id.* Matthews argues that because his criminal history is old and includes convictions from other states, Matthews had informed his counsel, on the day of sentencing, that the PRS calculated by the court was incorrect. *Id.*

The trial court has discretion to grant or deny a continuance request, and its decision will not be reversed absent a showing an abuse of that

discretion. ***Commonwealth v. Antidormi***, 84 A.3d 736, 745 (Pa.Super. 2014). An appellant must establish he was prejudiced by the denial of the motion, by showing "specifically in what manner he was unable to prepare . . . or how he would have prepared differently had he been given more time." ***Id.*** at 745 (quoting ***Commonwealth v. Ross***, 57 A.3d 85, 91 (Pa.Super. 2012)).

According to the trial court opinion, the court denied the request for a continuance because (1) Matthews' initial sentencing hearing had already been continued once because Matthews had contested his PRS and requested counsel; (2) some time prior to sentencing, the court provided counsel with the explanation of the Adult Probation/Parole Department's PRS calculation; (3) the court also advised the parties, via a letter, that the court concluded Matthews fell into the category of an RFEL; and (4) on the day before sentencing, Matthew's counsel provided the court with a three-page memorandum regarding the PRS calculation. Tr. Ct. Op. at 9. Furthermore, the sentencing transcript reflects that the court undertook a thorough review of Matthews' PRS prior to the hearing, and considered additional arguments Matthews raised against his classification as an RFEL at the hearing. ***See*** N.T. (Sentencing), 5/15/15, at 12-13, 16-17, 26-31.[12] Therefore, Matthews' PRS

---

[12] The court also stated, "[T]here's nothing so complex about this presentence report that would require us to postpone sentencing as a consequence of such complexity that we have to have a special hearing just to address whether or not the presentence investigation report is accurate or not. I'm prepared to

had been duly at issue for some time, and the court was not obligated to comply with the last-minute request for another continuance.

Moreover, Matthews has failed to allege prejudice, by way of asserting that the court erred in determining he was in the RFEL category.[13] The court also noted that even if the court had considered his PRS as 5, as Matthews argued at the hearing, it would not have affected Matthews' sentence, as (1) the court had discretion to consider criminal history not included in the PRS calculation, and (2) the court chose to impose a sentence that exceeded the guidelines when computed using either a PRS as 5 or the RFEL category. Tr. Ct. Op. at 8. We therefore find the court did not abuse its discretion in denying the request for a continuance.

## VI. Sentence

In his final issue, Matthews argues the court imposed an illegal sentence. Matthews' Br. at 14. Matthews claims the court imposed a sentence for fleeing and eluding that was in excess of the aggravated range, on the basis that Matthews engaged in a high-speed chase that endangered law enforcement or the public. *Id.* at 15. Matthews states that because these factors statutorily enhance the grading of the crime for which he was convicted, they were already contemplated by the offense gravity score, and

---

address the prior record score today. If we happen to make an error, you can raise that in your post-sentence motion[.]" N.T. (Sentencing) at 17.

[13] Although Matthews has not directly challenged the court's calculation of his PRS, which is a discretionary sentencing claim, here it is relevant insofar as whether the court's denial of the continuance request prejudiced Matthews.

the court's considering these factors as a basis for imposing an aggravated sentence constituted impermissible "double counting." *Id.* (quoting *Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa.Super. 2000) (*en banc*)).

We reject Matthews' attempt to frame this issue as a challenge to the legality of his sentence, as the assertion that the trial court considered impermissible factors at sentencing is properly categorized as a challenge to the discretionary aspects of a sentence. *See, e.g., Goggins*, 748 A.2d at 731; *Commonwealth v. Impellizzeri*, 661 A.2d 422, 433 (Pa.Super. 1995); *Commonwealth v. Dotter*, 589 A.2d 726, 730-31 (Pa.Super. 1991). Although Matthews has included a Rule 2119(f) statement in his brief, arguing that we should exercise our discretion to review the sentence because it raises a substantial question, Matthews did not preserve this issue by raising it before the trial court at sentencing, or in his post-sentence motion or amended post-sentence motion. He also failed to include this issue in his Rule 1925(b) statement of errors. Accordingly, the trial court did not address this claim in its Rule 1925(a) opinion. The issue is therefore waived, and we decline to review it.

Judgment of sentence vacated. Conviction on DUI - refusal of blood testing vacated. Remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/17/2020