J-S54022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRAVIS A. DEGROOT | : | |
| | : | |
| Appellant | : | No. 156 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 19, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003467-2018

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 25, 2021**

Travis A. DeGroot appeals from the judgment of sentence entered following his jury trial convictions for Delivery of a Controlled Substance, Possession with Intent to Deliver ("PWID"), Criminal Use of a Communication Facility, Possession of a Controlled Substance, and Possession of Drug Paraphernalia.[1] DeGroot argues the Commonwealth presented insufficient evidence to support the verdict, his Sixth Amendment right to confront witnesses was violated because a confidential informant did not testify at trial, and the trial court imposed an illegal sentence. We affirm.

In October 2018, DeGroot was charged with the above offenses. The court held a jury trial in October 2019.

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(30), 18 Pa.C.S.A. § 7512(a), 35 P.S. §§ 780-113(a)(16), and 780-113(a)(32), respectively.

Wilkes-Barre Police Officer Jeffrey Ference testified that on May 22, 2018, he was working in an anticrime unit on a narcotics case, and was working jointly with the Pennsylvania State Police. N.T., 10/22/19, at 50-51. On that date, the police officers were working with a confidential informant ("CI") and conducted a search of the CI to make sure that the only money the CI had on his or her person would be the pre-recorded buy money, and that the CI had no drugs or contraband. *Id.* at 52, 54. After searching the CI, the police provided the CI with approximately $400 in pre-recorded buy money. *Id.* at 57-58.

The CI made a phone call to a male known to the CI as "DS." *Id.* at 55. Officer Ference was present when this call was made, and the call was on speaker phone. *Id.* Officer Ference testified that there was a male voice at the other end of the phone line, and that DS and the CI arranged a meeting at a Turkey Hill convenience store where they agreed that the CI and DS would exchange money for narcotics. *Id.* Officer Ference and the CI discussed a predetermined signal—the CI removing his hat—that the CI would use when the exchange of money for narcotics had occurred. *Id.* at 55-56.

At this point, DeGroot objected, claiming the officer was "testifying what the CI basically said or did. If [DeGroot did not have] a chance to cross examine [the CI], that's unconstitutional." *Id.* at 58-59. The court overruled the objection.

Officer Ference testified that the police drove the CI to the Turkey Hill, and the police set up surveillance in the area. *Id.* at 56, 60. "After a brief wait,

a maroon minivan pulled into the parking lot" and the CI entered the rear passenger side of the vehicle. *Id.* at 60. A woman was driving the minivan, and a man was in the front passenger seat. *Id.* Officer Ference identified the man as DeGroot. *Id.* Officer Ference observed the CI interacting with DeGroot, and saw a hand-to-hand transaction occur. *Id.* at 61. Officer Ference testified that when the CI was in the vehicle, it traveled less than a quarter mile, the female's hands were on the wheel for the entirety of the drive, and the woman did not engage with the CI. *Id.*

When the CI exited the vehicle, he or she gave the signal that the transaction had occurred, and the officers proceeded to stop the vehicle and arrest DeGroot. *Id.* at 62. Officer Ference searched DeGroot, and found money, including the $400 in prerecorded buy money, "a secondary amount of crack cocaine," and three cell phones. *Id.* at 63. The officer found five small baggies of narcotics, noting the narcotics were "packaged in small corner wrappers of baggies, tied, knotted, weighed" and "[t]he narcotics would be consistent with denomination[ s]o this amount of narcotics would be this amount of money." *Id.* at 64. The police officers put the narcotics "in larger bags for easier packaging and easier transportation to the lab." *Id.* at 65. Officer Ference testified that, after confiscating the cell phones, the officers called the same number the CI had called to schedule the control buy, and one of DeGroot's phones rang, showing the police department's number. *Id.* at 68. Officer Ference also testified that, from his training and experience, one

phone, usually not in the person's name, would be used for coordinating drug transactions, and the other phones would be for personal use. *Id.* at 86.

The officers also met with the CI, who gave them the narcotics purchased during the controlled buy. *Id.* at 69. The officers again searched the CI, to ensure the CI had no further contraband. *Id.* Officer Ference testified that the narcotics were "inside the baggies" and "in their original packaging, the clear cellophane bag." *Id.* at 70. The narcotic was the "white rock substance." *Id.* The officers put the clear cellophane bags containing the "white rock substance" inside a Ziploc bag to send to the lab. *Id.*

The Commonwealth next presented the testimony of a forensic scientist, Kenneth Mayberry, who was accepted as an expert. *Id.* at 89-92. He testified that the two exhibit bags "contained cocaine," a Schedule II controlled substance, with one bag weighing 1.84 grams, plus or minus .01 grams, and the second weighing 1.67 grams, plus or minus 0.01 grams. *Id.* at 96.

At the conclusion of the Commonwealth's case, DeGroot presented a motion to dismiss. He argued, among other things, that his Sixth Amendment rights were violated because the CI did not testify, and that the Commonwealth did not properly authenticate the drugs because the police officers repackaged the drugs and the Commonwealth failed to establish a chain of custody. *Id.* at 101. The court denied the motion. *Id.* at 101-02.

DeGroot testified in his own defense. He stated that he waited in the van, while the driver went inside the Turkey Hill to buy cigarettes. The driver told him that if her phone rang, he should answer it and tell the person "to

stay in the car." *Id.* at 106. According to DeGroot, when the phone rang, he answered, told the person to stay in the car, and immediately hung up. *Id.* When the driver returned, the phone rang again, and the driver answered and told the caller to go down the street; she then let a woman inside the minivan. *Id.* at 107. DeGroot testified that his two phones were in the cup holders, and as he grabbed one of his phones, the woman put money on the center console, and the driver grabbed the money. *Id.* at 108-09. The driver let the woman out and "[m]oments after that" the police stopped the minivan. *Id.* at 109. DeGroot said that when he got out of the minivan, he did not have a phone or narcotics on him. *Id.* at 110. He had $1,800 in cash, a bank card, and an identification card. *Id.* at 110, 117. On cross-examination, DeGroot agreed that when initially asked his name, he provided his brother's name. *Id.* at 111-12.

The jury found DeGroot guilty of the above-referenced offenses. In December 2019, the trial court sentenced DeGroot to 16 to 48 months' incarceration and 12 months' probation. On the sentencing order, the court listed the controlled substance at issue as "crack cocaine." Order, filed Dec. 19, 2019. DeGroot filed a timely notice of appeal.

DeGroot raises the following issues:

> I. Whether the evidence was insufficient to prove possession with intent to distribution crack cocaine?
>
> II. Whether the evidence was insufficient to prove delivery of crack cocaine?

III. Whether the conviction was obtained in violation of the confrontation clause of the Sixth Amendment to the Constitution of the United States?

IV. Whether the consecutive sentences for delivery of crack cocaine and possession with intent to deliver crack cocaine are based on inaccurate information and false assumptions in violation of the Due Process Clause of the Fourteenth Amendment?

DeGroot's Br. at 2-3.

In his first two issues, DeGroot challenges the sufficiency of the evidence, claiming the Commonwealth failed to prove he possessed crack cocaine, that he had the intent to distribute crack cocaine, or that he delivered crack cocaine.

DeGroot maintains that the evidence was insufficient to prove the substance at issue was crack cocaine. He points out that Officer Ference testified that he removed the cocaine from its original packaging and put it in a larger bag before sending it to the lab for analysis. According to DeGroot, the substance found in the two bags and sent to the laboratory was not crack cocaine but rather a substance that "contained cocaine." DeGroot's Br. at 11. He also argues that the procedure of placing the substance into another bag for transmittal to the laboratory broke the chain of custody such that the Commonwealth failed to prove that the substance police took from the CI was the same substance that the laboratory received. DeGroot further claims the Commonwealth did not prove he had the intent to distribute because "[t]he drug quantity was so miniscule that it is not possible to draw an inference of

intent to distribute," and was more consistent with possession for personal use. ***Id.***

We review a challenge to the sufficiency of the evidence *de novo*. ***Commonwealth v. Chambers***, 188 A.3d 400, 409 (Pa. 2018). "To determine if the evidence was sufficient to support a guilty verdict, we view the evidence in the light most favorable to the Commonwealth, as verdict-winner, and draw all reasonable inferences in the Commonwealth's favor." ***Commonwealth v. Hall***, 199 A.3d 954, 960 (Pa.Super. 2018). "We then ask whether the evidence was sufficient to permit a jury to find each and every element of the crimes charged beyond a reasonable doubt." ***Id.*** (citing ***Commonwealth v. Hoffman***, 198 A.3d 1112, 1118 (Pa.Super. 2018)). "The Commonwealth may sustain its burden with wholly circumstantial evidence," and we defer to the finder of fact in matters of credibility. ***Id.*** (citing ***Commonwealth v. Hewlett***, 189 A.3d 1004, 1008 (Pa.Super. 2018)).

The evidence was sufficient to prove the delivery, possession, and PWID charges. "[F]or a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004); ***see also*** 35 P.S. § 780–113(a)(30). The term "delivery," as used in this section, is defined as "the actual, constructive, or attempted transfer from one person to another of a

controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780–102.

Here, the evidence was sufficient to prove that DeGroot delivered 1.84 grams of cocaine to the CI in exchange for $400. Officer Ference testified that the CI set up a drug transaction, that he observed the CI and DeGroot interact, and that, after the transaction, DeGroot had the $400 in buy money and the CI had the substance that a forensic scientist testified contained cocaine. Such evidence was sufficient to support the Delivery of a Controlled Substance conviction.

To prove Possession of a Controlled Substance, the Commonwealth must prove the defendant "[k]nowingly or intentionally possess[ed] a controlled or counterfeit substance" and that he was "a person not registered under this act." 35 P.S. § 780-113(a)(16). The Commonwealth may prove possession by showing actual, constructive, or joint constructive possession. **Commonwealth v. Vargas**, 108 A.3d 858, 868 (Pa.Super. 2014) (*en banc*). To prove actual possession, the Commonwealth must show that the contraband was found on the defendant's person. **Id.**

Here, DeGroot claims that the Commonwealth did not prove he possessed a controlled substance. We disagree. The Commonwealth presented testimony that police found a substance on DeGroot's person that tested positive for cocaine. This was sufficient to support the conviction for Possession of a Controlled Substance.

To sustain a conviction for PWID, "the Commonwealth must prove that the defendant 'possessed a controlled substance and did so with the intent to deliver it.'" ***Commonwealth v. Sarvey***, 199 A.3d 436, 450 (Pa.Super. 2018) (citation omitted). "[A]ll the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." ***Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa.Super. 2008) (quoting ***Commonwealth v. Brown***, 904 A.2d 925, 931 (Pa.Super. 2006)). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa.Super. 2003) (quoting ***Commonwealth v. Conaway***, 791 A.2d 359, 363 (Pa.Super. 2002)).

Here, the evidence established that when the police officers searched DeGroot, he had 1.64 grams of a substance containing cocaine on him; the substance was packaged in smaller quantities; he had three cellphones with him; and he had in his possession $1,800 in cash. Further, the police arrested DeGroot immediately after a controlled buy with the CI. Such evidence supports a guilty verdict for PWID. ***See Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237-38 (Pa. 2007) (factors to consider when determining intent for PWID, when quantity is not dispositive, include the manner the controlled substance was packaged, the defendant's behavior, whether there was drug paraphernalia, and whether the defendant possessed large sums of cash).

DeGroot's argument that the evidence was insufficient because he was charged with possession, delivery of, and PWID of "crack cocaine," but convicted of possession, delivery, and PWID of "cocaine," is meritless. "Crack" cocaine is essentially a solidified form of powder cocaine that has been converted by chemical means into a hard substance. The chemical process "does not alter its basic ingredient: cocaine. As a synthetic form of cocaine, it is classified under Schedule II." *Commonwealth v. Dancy*, 650 A.2d 448, 450 (Pa.Super. 1994) (citation to record omitted). Indeed, the Controlled Substance Act, 35 P.S. § 780-104(2)(i), defines Schedule II narcotics to include "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves," regardless of whether the "salt, compound, derivative, or preparation" was produced "by means of chemical synthesis, or by combination of extraction and chemical synthesis . . . ."

Similarly, DeGroot's focus on the forensic scientist's choice of words–"substance containing cocaine"—is misleading. His testimony[2] established that the substances sold to the CI and found on DeGroot's person contained cocaine, which is a Schedule II controlled substance.

Further, DeGroot's challenges to the chain of evidence do not render the evidence so insubstantial as to be incapable of proving guilt beyond a reasonable doubt. *Commonwealth v. Bolden*, 406 A.2d 333, 335-36 (Pa.

---

[2] DeGroot also notes the lab reports uses similar wording. Although the lab reports were admitted into evidence, they were not included in the certified record. DeGroot has thus waived this aspect of his challenge.

1979); *cf. Commonwealth v. Witmayer*, 144 A.3d 939, 950 (Pa. Super. 2016) (stating that gaps in the chain of custody go to weight, not admissibility of evidence). Here, there was no gap in the chain of custody. Rather, the officers merely transferred the items into a different bag for transport to the lab. Furthermore, DeGroot cross-examined the witnesses regarding their handling of the evidence, and the jury considered such testimony when rendering its verdict. Such testimony does not render the evidence cited above insufficient to prove that DeGroot committed each crime.

In his next issue, DeGroot argues the failure to call the CI to testify violated his Sixth Amendment right to confront witnesses. He argues the signal used by the CI was a communication accusing DeGroot, and DeGroot did not have an opportunity to cross-examine the CI as to its use. He further claims Officer Ference's testimony violated the hearsay rule and his right to confront witnesses, because he testified about words and actions of a non-testifying CI.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Radecki*, 180 A.3d 441, 451 (Pa.Super. 2018) (quoting *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa.Super. 2015)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (quoting *Tyson*,

119 A.3d at 357-58). Further, a defendant's "failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." *Id.* at 455 (quoting **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 713 (Pa.Super. 2013)); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

DeGroot has waived his challenge to the testimony regarding the signal provided by the CI. He did not contemporaneously object to the testimony regarding the CI's use of the signal, and made no mention of the signal when objecting to Officer Ference's testimony. N.T., 10/22/19, at 56-59; **see Radecki**, 180 A.3d at 455.

DeGroot also waived this challenge as to the remainder of Officer Ference's testimony. DeGroot did not object until after Officer Ference had testified at length – that the CI made a call to "DS," the CI and DS arranged a meeting for a drug transaction, the CI would take off his or her hat when the transaction had been completed, the officers conducted a search of the CI prior to the transaction, and the officers provided the CI with buy money. N.T., 10/22/19, at 55-58. He therefore waived the challenge to the testimony. **See Radecki**, 180 A.3d at 455.

Further, even if he had timely raised an objection to Officer Ference's testimony, we would conclude the court did not abuse its discretion in denying the objection. DeGroot objected, arguing that "[b]ecause if [the CI was] not coming [to testify], I object to this entire line of questioning as hearsay." N.T., 10/22/19, at 58. The court overruled the objection, noting the officer was

testifying to his observations. *Id.* DeGroot then stated the officer was "testifying [as to] what the CI basically said or did [and i]f I don't get a chance to cross examine this person, that's unconstitutional." *Id.* at 58-59. The court overruled the objection. *Id.* at 59. We would conclude the court did not abuse its discretion in doing so, because, as the court noted, Officer Ference was testifying regarding his observations of the CI's and DeGroot's actions, and the officer was subject to cross-examination.

In his final issue, DeGroot claims his sentence was illegal because it violated his Fourteenth Amendment Due Process rights. He claims the court based the sentence on inaccurate information and false assumptions, "as if [DeGroot] had been found guilty of delivery of crack cocaine and possession with intent to deliver crack cocaine." DeGroot's Br. at 16. He notes the sentencing order specifies he delivered "crack cocaine," and stated he was guilty of possession with intent to deliver "crack cocaine." According to DeGroot, the lab report – which is not in the certified record – indicates the delivery involved a "very small quantity of a substance containing cocaine." *Id.*

DeGroot appears to claim that the court sentenced him for a crime of which he was not convicted. This claim fails. As the trial court stated, DeGroot was convicted of delivering 1.84 grams of cocaine and possession and PWID of 1.67 grams of cocaine. That the sentencing order stated his conviction was for delivery and PWID of crack cocaine is of no moment, as crack cocaine is, for present purposes, cocaine. To the extent he maintains that the court

- 13 -

considered an impermissible factor in sentencing, such a claim goes to discretionary aspects of sentencing. ***Commonwealth v. Matthews***, 227 A.3d 1, 11 (Pa.Super. 2020). DeGroot waived any such challenge by failing to raise the issue in post-sentence motions, and by not seeking allowance of review in this Court pursuant to Pa.R.A.P. 2119(f).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/25/2021