J-S12007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN VANDERSLICE | : | |
| | : | |
| Appellant | : | No. 402 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 13, 2019
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0003104-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    Filed: July 8, 2021

Shawn Vanderslice appeals from the judgment of sentence, entered in

the Court of Common Pleas of Chester County, after he entered a hybrid guilty

plea[1] to rape by forcible compulsion,[2] involuntary deviate sexual intercourse

(IDSI),[3] kidnapping,[4] aggravated indecent assault,[5] sexual abuse of children,[6]

---

[1] Vanderslice's guilty plea was negotiated as to the charges, but left open with
regard to sentencing.

[2] 18 Pa.C.S.A. § 3121(a)(1).

[3] 18 Pa.C.S.A. § 3123(a)(1).

[4] 18 Pa.C.S.A. § 2901(a)(3).

[5] 18 Pa.C.S.A. § 3125(a)(1).

[6] 18 Pa.C.S.A. § 6312(b)(1).

endangering the welfare of a child (EWOC),[7] and possession with intent to deliver (PWID).[8]

The Commonwealth set forth the disturbing facts of this case, which Vanderslice confirmed were true, at his guilty plea hearing:

> [Vanderslice] is the biological father of the victim child. [The victim's] date of birth [] ma[de] her 16 years old at the time of these events. On August 16, 2018[, Vanderslice] picked up the victim child at work at a fast[-]food restaurant in Audubon, Pennsylvania[,] at approximately 9:45 p.m. He drove the victim to a portion of the Schuylkill River Trail, which is in East Pikeland Township [] in Chester County, and told the victim, "[Y]ou are either going to make tonight a good night or a bad night." [Vanderslice] then forced [the victim] out of the vehicle and they walked down the trail. He forced [her] to snort or eat drugs, which she described as looking like white rocks. [Vanderslice] then forced her to take all of her clothes off and took pictures of her naked body with his cell phone, telling her that if she did not cooperate[,] he would kill her. [Vanderslice] told the victim child that he was taking the pictures to sell them. [Vanderslice] started touching the victim child's genitals with his hands and she attempted to run away, leaving her clothing behind. [Vanderslice] caught up to her and dragged her back to the same vehicle by the hair and continued to tell her that he would kill her if she was not quiet.
>
> [Vanderslice] then drove the victim child to a second location on Zieber Road, [] in East Coventry Township[.] While inside the vehicle at this location, [Vanderslice] sexually assaulted the victim multiple times, penetrating her vagina with his fingers and his penis[,] and forcing her to perform oral sex on him. [Vanderslice] used the seatbelts to restrain [the victim] and keep her legs apart[,] and[,] at one point[,] penetrated her with a hairbrush. The victim child reported that [Vanderslice] used his cell phone during the assaults to photograph or record what he was doing[,] and that [Vanderslice] made statements to her including that she

---

[7] 18 Pa.C.S.A. § 4303(a)(1).

[8] 35 P.S. § 780-113(a)(30).

was ["]daddy's little girl[,"] and that she would never need another man[,] and they could run away together. During the assaults, [Vanderslice] also told the victim child that he intended to rent a hotel room and bring her younger brother so that he could film the two children having some type of sexual contact with each other. During these assaults, the victim child reported that she repeatedly asked [Vanderslice] to stop but he would not. The sexual assaults took place throughout the night and into the early morning hours of August 17[,] 2018. At some point[,] the car became stuck in the mud at that location, and during daylight[, Vanderslice and the victim] left the vehicle and [] walk[ed] to several locations in Spring City[,] and then Royersford[,] before eventually getting a ride back to the victim child's home in Norristown, Pennsylvania.

When they returned to [the victim child's home], [she] was able to tell her guardian that she needed to speak to her privately without [Vanderslice] knowing, and [the victim] disclosed what [Vanderslice] had done. Norristown police were notified, and [] arrested [Vanderslice] at that location. The victim child was transported to Abington Hospital for treatment and a forensic sexual assault examination. The nurse who examined [the victim] noted lacerations and scratches, as well as insect bites over most of the victim child's body. [The victim] also had multiple tears and abrasions to her vaginal area. While at Abington Hospital, the victim child's urine tested positive for methamphetamine, and her blood was later sent to NMS Laboratory for further testing and tested positive for methamphetamine and amphetamines, as well as caffeine.

At the time of his arrest, [Vanderslice]'s cell phone was confiscated and later searched pursuant to a search warrant. Investigators were able to [bypass] the password protecting the phone and recovered photos and videos in the deleted files[.] These photos include those taken of the victim child without her clothing at the location of the first assault and videos of [Vanderslice] sexually assaulting [the victim] in the car. [Vanderslice] narrates the videos taken in the car[,] and speaks as though addressing other unknown people. During the search of the phone, investigators found [] several thousand[] still[-]image files depicting child sexual exploitation, child erotica, implied incest[,] and bondage. [T]hose numerous or several thousand images were not of the victim child. The search also revealed numerous sites—numerous visits to sites hosting content

relating to young females and child sexual exploitation that allows users to create accounts and upload still images and videos.

During the course of the investigation, detectives took the victim child and her guardian to the area of the Schuylkill River Trail [where the assault occurred,] and were able to recover the victim child's clothing and undergarments at the East Pikeland location. [Vanderslice]'s car was recovered stuck in the mud at the East Coventry location and was towed [] for processing[. N]umerous items seen on the videos recovered from [Vanderslice]'s phone were recovered or observed in that vehicle.

N.T. Guilty Plea Hearing, 7/18/19, at 3-7.

After his arrest, the Commonwealth charged Vanderslice with one count each of kidnapping, rape by forcible compulsion, incest,[9] unlawful restraint of a minor,[10] false imprisonment of a minor,[11] EWOC, and corruption of minors;[12] and, two counts each of IDSI, sexual abuse of a child, sexual assault,[13] aggravated indecent assault, possession of child pornography,[14] intimidation,[15] criminal use of a communication facility,[16] PWID, indecent

---

[9] 18 Pa.C.S.A. § 4302(a).

[10] 18 Pa.C.S.A. § 2902(c)(1).

[11] 18 Pa.C.S.A. § 2903(c).

[12] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[13] 18 Pa.C.S.A. § 3124.1.

[14] 18 Pa.C.S.A. § 6312(d).

[15] 18 Pa.C.S.A. § 4952(a)(1).

[16] 18 Pa.C.S.A. § 7512(a).

assault by forcible compulsion,[17] terroristic threats,[18] simple assault,[19] and recklessly endangering another person (REAP).[20]

On June 4, 2019, Vanderslice filed a pre-trial motion to compel the release of the cell phone video he recorded during the assault of the child victim, requesting that he and his attorney have the opportunity to review the footage and that defense mitigation expert and forensic psychologist, Dr. Elliot Atkins, be permitted to view the footage "so [that Dr. Atkins could] make a full and complete diagnosis of [Vanderslice]," and further in order to "assist [Dr. Atkins] in writing a report for [the defense, and] to try to understand what happened, [by] view[ing Vanderslice], essentially, [] in the commission of these offenses."  N.T. Pre-Trial Motion Hearing, 7/9/19, at 6.

On July 17, 2019, the court granted Vanderslice's motion in part, ordering the Commonwealth to make the video and still-photo files available to Vanderslice and his attorney in the Chester County Detective's interview room, during which audio and video recording of that room would be suspended to preserve Vanderslice's attorney-client privilege.  The court denied the motion to compel with regard to permitting Dr. Atkins to view any video and/or still photos.

---

[17] 18 Pa.C.S.A. § 3126(a)(2).

[18] 18 Pa.C.S.A. § 2706.

[19] 18 Pa.C.S.A. § 2701(a)(1).

[20] 18 Pa.C.S.A. § 2705.

On July 18, 2019, Vanderslice tendered his guilty plea to the above-stated charges and the court subsequently scheduled sentencing. On December 13, 2019, at the beginning of the sentencing hearing, at the Commonwealth's request, the sentencing judge stated his intent to view, prior to imposing sentence, one of the videos that Vanderslice recorded while committing the acts to which he pled guilty. Vanderslice's attorney moved for a continuance to permit the court to experience a "cooling-off period" because of the inflammatory nature of the evidence. The court denied the continuance motion, viewed the video, and sentenced Vanderslice to forty-six to ninety-four years' incarceration.[21] On December 19, 2019, Vanderslice filed a motion to modify and reduce sentence, which the court denied that same day without a hearing.

Vanderslice filed a timely notice of appeal on January 17, 2020. On January 21, 2020, the trial court ordered Vanderslice to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Vanderslice failed to file the statement; therefore, by order dated June 8, 2020, this Court dismissed Vanderslice's appeal. Upon petition by defense counsel, this Court subsequently vacated our dismissal order, reinstated Vanderslice's appeal, and remanded the matter to the trial court for the proper

_____

[21] The court sentenced Vanderslice to: 10-20 years' imprisonment for kidnapping; 10-20 years' imprisonment for rape by forcible compulsion; 10-20 years' imprisonment for IDSI; 10-20 years' imprisonment for filming and photographing a sex act with a child; 4-8 years' imprisonment for aggravated indecent assault; 1-3 years' imprisonment for EWOC; and 1-3 years' imprisonment for PWID. All sentences are to run consecutively.

filing of Vanderslice's Rule 1925 statement. On remand, both Vanderslice and the trial court have complied with Rule 1925.

On appeal, Vanderslice raises the following issues for our review:

1. Did the sentencing court err in not allowing Dr. Elliot Atkins to review videos of the offense, especially a video of the offense viewed by the court immediately prior to sentencing?

2. Did the sentencing court err in failing to grant a continuance when it decided to view video depicting the graphic rape immediately before sentencing?

3. Did the sentencing court err in considering the facts of unrelated pending charges against [Vanderslice]?

4. Did the sentencing court err in not considering mitigating factors presented at sentencing, such as[,] but no[t] limited to[, Vanderslice]'s drug addiction and [] mental health [conditions]?

5. Did the sentencing court abuse it[s] discretion in sentencing [Vanderslice] to an aggregate sentence of forty-six [] years to ninety-four [] years [of] confinement, imposing four statutory maximum sentences consecutively in addition[] to other consecutive sentences?

Appellant's Brief, at 6 (reordered for ease of disposition; unnecessary capitalization omitted).

In his first issue, Vanderslice challenges the court's pre-trial ruling precluding defense mitigation expert, Dr. Atkins, from viewing the videos Vanderslice recorded of himself assaulting his victim. In explaining its ruling, the court determined that: (1) only members of the "trial team" are permitted to view videos that would otherwise constitute child pornography, since dissemination and viewing of the material re-victimizes the victim; (2) Dr. Atkins' role in the matter as a sentencing mitigation expert did not meet the

criteria for "trial team"; and (3) there existed a wealth of other material from which Dr. Atkins could form an accurate opinion as to Vanderslice's mental health.

Vanderslice supports his claim by relying on the mandatory disclosure rule set forth in Pa.R.Crim.P. 573(B)(1), as well as the exception to the criminal prohibition on dissemination of child pornography set forth in 18 Pa.C.S.A. § 6312(f)(1). Vanderslice claims that the trial court abused its discretion because: (1) Dr. Atkins was, in fact, a member of the trial team; (2) permitting Dr. Atkins to view the material would efficiently move the matter toward a non-trial resolution; (3) Dr. Atkins' opinion, which was not informed by the video the court had just viewed, "seemed to have incensed the court which led to a manifestly unreasonable sentence[;]" and (4) the error prejudiced Vanderslice insofar as "the trial court flatly rejected [Dr.] Atkins' conclusion, finding no mitigation[.]" *See* Appellant's Brief, at 35. We disagree.

On appeal, we will only reverse the trial court's discovery rulings if we discern an abuse of discretion. *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (quoting *Commonwealth v. Boich*, 982 A.2d 102, 109 (Pa. Super. 2009) (en banc)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Id.* (quoting *Commonwealth v. Hanford*, 937 A.2d 1094, 1098 (Pa. Super.

2007)). We have previously found that it is the trial court's responsibility to determine whether prohibited material was captured in contemplation of a legitimate purpose as defined in section 6312(f)(1). ***Commonwealth v. Tiffany***, 926 A.2d 503, 512 (Pa. Super. 2007) (citing ***Commonwealth v. Savich***, 716 A.2d 1251, 1256 (Pa. Super. 1987)).

In criminal cases, the Commonwealth must abide by the mandatory disclosure rules set forth in Rule 573(B)(1), which states:

> **(B)** Disclosure by the Commonwealth.
>
> **(1) *Mandatory.*** In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
>> **(a)** Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;
>>
>> **(b)** any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;
>>
>> \*   \*   \*
>>
>> **(f)** any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B)(1).

Additionally, the exception to the criminal prohibition on dissemination of child pornography, on which Vanderslice relies in making out his claim, is set forth in 18 Pa.C.S.A. § 6312(f)(1). That subsection provides that criminal

- 9 -

liability does not attach where "[a]ny [otherwise prohibited] material [] is viewed, possessed, controlled, brought[,] or caused to be brought into this Commonwealth, or presented, for a bona fide educational, scientific, **governmental or judicial purpose**." *Id.* (emphasis added).

In its supplemental Rule 1925 opinion, the court reasoned that Dr. Atkins was not entitled to view the requested material because:

> First and foremost, the dissemination of such graphic photos and videos serves to re-victimize the victim. To have the victim re-victimized for purposes of mitigation is a truly offensive proposition. Although a defendant may have the right to view the evidence against him, counsel for the Commonwealth expressed that never, in her experience with the District Attorney's Office, has any such photo or video depicting child pornography been shared with a civilian.[22] The [] court agreed, concluding that there was a wealth of other evidence . . . for Dr. Atkins to consider in his evaluation of [Vanderslice]'s mental health status[, and]

---

22 At the hearing, the Assistant District Attorney stated:

> The Commonwealth has, and me, personally, participated in hundreds, if not over a thousand, child sexual abuse and adult sexual assault prosecutions in this office and in my prior position, many of which involved taking images of young children or videos of young children. In not one of those cases have we ever disseminated images to a civilian. In this case we would be disseminating sexual child pornography, child rape, and it revictimizes the victim. To have the victim be revictimized by having this video watched for purposes of mitigation for the defendant is an offensive concept. Certainly, if Dr. Atkins has to limit his report saying, ["]I did not see the videos, had I seen them[,] that may in some way affect my opinion[."] I think that is the more appropriate course of action here.

N.T. Pre-Trial Motion Hearing, 7/9/19, at 10-11.

that [Dr. Atkins'] viewing of the videos and photos was simply not necessary [for him] to develop an accurate assessment.

In cases of child pornography, only the trial team is permitted to view the images and/or videos. [Although] the defense argued that Dr. Atkins was a part of the trial team,[23] the Commonwealth and the court disagreed. Dr. Atkins' intention was to view the videos and images for purposes of mitigation at the time of sentencing. His testimony was not intended to be introduced at the time of trial nor would it likely have been admissible.[24] Given the foregoing discussion, the undersigned deemed the harm to the victim in allowing Dr. Atkins to view the video and photographic evidence was too great and the purpose of such viewing was insufficiently compelling; therefore, in the court's discretion, the defense's request was denied. This was not an error of law or abuse of discretion.

_____

[23] Defense counsel argued this point before the trial court at the pre-trial hearing as follows: "I could certainly consider [Dr. Atkins] to be part of the trial team. I mean, he functions in this context in the same way that an investigator from my office would function, except the thing that he's investigating is my client." N.T. Pre-Trial Motion Hearing, 7/9/19, at 17.

[24] Defense counsel explained her theory of admissibility to the trial court as follows:

I mean, candidly, your Honor, my desire is to steer this case, for obvious reasons, into a non-trial disposition. So[,] one of the ways by which I'm able to accomplish that is to have Dr. Atkins, who has formed some relationship with Mr. Vanderslice, evaluating his mental health[—i]f [Dr. Atkins] has had the benefit of reviewing the same evidence that [Vanderslice] has had the benefit of reviewing, [Dr. Atkins wi]ll be able to speak to [Vanderslice] candidly, in a way, because I believe my client is functioning somewhat under the notion that there would be a mental health defense that would save him or protect him in this. So[,] the ability to disabuse [Vanderslice] of that inaccurate assessment will go a long way to making this be a non-trial disposition, and Dr. Atkins can be very helpful in that regard as well.

*Id.* at 18.

Trial Court Opinion, 8/24/20, at 9.

Here, we find that the Commonwealth met the mandatory disclosure requirements set forth in Rule 573 when it made Vanderslice's requested video available to him and his attorney in the Chester County detectives interview room. ***See*** Pa.R.Crim.P. 573(B)(1)(f). Additionally, in light of the criminal prohibitions contained in section 6312, we find that the trial court's protective orders—namely, (1) requiring the Commonwealth to make the subject matter available, without passing physical copies, to Vanderslice and his attorney, in a private room out of public view, and (2) ensuring that Vanderslice's attorney-client privilege was preserved while Vanderslice and his attorney reviewed the material—were reasonable under the circumstances. ***See*** Pa.R.Crim.P. 573(B)(1) ("In all court cases, on request by the defendant, and **subject to any protective order** which the Commonwealth might obtain under this rule, the Commonwealth shall disclose **to the defendant's attorney** all of the following requested items.") (emphasis added). Nothing in the text of Rule 573, or any caselaw cited by either party, or discovered by this Court, suggests that the Commonwealth was required to turn over the prohibited material to Dr. Atkins, as a sentencing mitigation expert, or any defense investigator for that matter. ***See supra*** at n.23.

Moreover, we agree with the trial court's assessment of the nature of Vanderslice's discovery request, that: (1) Dr. Atkins' role in the matter as a

**sentencing mitigation expert** did not meet the criteria for "trial team";[25]

(2) there existed a wealth of other material from which Dr. Atkins could form

an accurate opinion as to Vanderslice's mental health;[26] and (3) permitting

Dr. Atkins to view the material would have been a violation of two of the

criminal prohibitions set forth in section 6312, where such dissemination and

_____

[25] Although the trial court emphasized the term "trial team" when discerning which individuals were permitted to view the material, *see* Trial Court Opinion, 8/24/20, at 9, we have not discovered that term used in the relevant statutes or case law.  Nevertheless, the record is devoid of any notice of a defense of insanity or mental infirmity and notice of expert evidence as to mental condition, as is required pursuant to Pa.R.Crim.P. 568.  *See also* Pa.R.Crim.P. 579.  As such, Vanderslice would not have been permitted to place insanity in issue **at trial**.  *See Commonwealth v. Sasse*, 921 A.2d 1229, 1234 (Pa. Super. 2007) ("In order to present the defense of insanity or mental infirmity at trial, Rule 568(A)(1) requires a defendant to file a notice of insanity or mental infirmity defense with the trial court and serve same on the Commonwealth.") (footnote omitted).  Therefore, any evidence of Vanderslice's mental illness would have been irrelevant for purposes of a trial in this matter.  *See Commonwealth v. Andrews*, 158 A.3d 1260, 1264 (Pa. Super. 2017) (citing *Commonwealth v. Hatfield*, 579 A.2d 945, 947 (Pa. Super. 1990)) (evidence of mental illness is irrelevant where defendant does not invoke insanity defense).

[26] We agree with the Commonwealth, *see* Appellee's Brief, at 15, that Dr. Atkins had ample evidence at his disposal from which to reach a determination regarding Vanderslice's mental health, without viewing the video or still photos, including:  the victim's statement, photographs of Vanderslice's vehicle, photographs of the scene, photographs of the victim's clothing found near the scene, medical records of the victim, cell phone records (including internet searches) from Vanderslice's phone, Vanderslice's admission that he recorded the rape with the intent to sell it for money, Vanderslice's guilty plea to very specific and detailed facts of the rape, Vanderslice's history of psychiatric treatment, and Dr. Atkins' interview of Vanderslice, which totaled over nine hours and occurred over multiple visits.

viewing of prohibited material[27] would only serve to re-victimize the victim. Therefore, we discern no abuse of discretion under these circumstances. *See Mendez*, *supra*; *see also* 18 Pa.C.S.A. §§ 6312(c)-(d).

Next, Vanderslice challenges the court's denial of his continuance request, which would have permitted the court to experience a "cooling-off period" to "take the matter under advisement [and] enable reasoned reflection" after viewing the inflammatory evidence and prior to sentencing Vanderslice. *See* Appellant's Brief, at 25-29. Vanderslice argues that his sentence, which the court imposed immediately after viewing the inflammatory video, could only be the result of the court's "passion and prejudice," because of the video's "graphic and disturbing" nature, which "naturally inspired sympathy for the child victim" and "bias against Vanderslice." *Id.* at 28. Vanderslice claims that the court's lengthy sentence evidences its bias against him because the Commonwealth only requested a sentence of thirty-eight to seventy-six years' incarceration, yet the court imposed a sentence of forty-six to ninety-four years' incarceration. *Id.* Vanderslice reasons further that his sentence was "practically" indistinguishable from the maximum sentence he could receive, which was fifty-six to one-hundred-and-twelve years' incarceration. *Id.* at 29.

---

[27] The trial court was well within its discretion to determine that Vanderslice did not capture the prohibited material in contemplation of a legitimate purpose, as defined in section 6312(f)(1), due to the nature of Vanderslice's acts and the circumstances surrounding those acts. *See Tiffany*, *supra*.

- 14 -

Our standard of review for a challenge to the trial court's grant or denial of a continuance request is well-settled:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As [the Pennsylvania Supreme Court has] consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Brooks*, 104, A.3d 466, 469 (Pa. 2014) (internal citations, quotation marks, and ellipsis omitted). Further, this court has stated that:

> the trial court exceeds the bounds of its discretion when it denies a continuance on the basis of an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. Accordingly, we must examine the reasons presented to the trial court for requesting the continuance, as well as the trial court's reasons for denying the request.

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa. Super. 2016). Additionally, the appellant must establish a specific prejudice suffered as a result of the trial court's denial of the motion for continuance, "by showing specifically in what manner [the appellant] was unable to prepare or how [the appellant] would have prepared differently [if] given more time." *Commonwealth v. Matthews*, 227 A.3d 1, 9 (Pa. Super. 2020) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa. Super. 2014)) (internal citation and quotation marks omitted).

Here, the trial court addressed Vanderslice's request for continuance as follows:

Obviously, [counsel], you know that I have read a volume of material, both from Dr. [Bruce] Mapes for the Sexual Offenders [Assessment] Board [(SOAB)], from Dr. Atkins, I've read your [defense sentencing] memorand[a], I've read [the Commonwealth's sentencing] memorandum, I've read all the letters that you've had attached to yours,[28] I've read the pre[-]sentence investigation [report]. So[,] while I have to be honest and say that I have not completely and totally made my mind up, I have a framework in my head, and I do want to listen to what everyone has to say here today, but we are going to proceed to sentencing [without granting the defense continuance request].

N.T. Sentencing Hearing, 12/13/19, at 8-9.

Based on our review of the record in this case, there was no abuse of discretion in the trial court's denial of Vanderslice's continuance request. *See Brooks*, *supra*. First, we note that Vanderslice has cited no case law in support of his argument that the trial court abused its discretion. *See* Pa.R.A.P. 2119. Second, we discern no prejudice suffered by Vanderslice given that he has failed to identify, specifically, in what manner, **he, and not the court**, was unable to prepare **or how he would have prepared differently** had the continuance been granted. *See Matthews*, *supra*. Moreover, the court stated that it had already reviewed all submitted materials related to the sentencing proceeding scheduled for that day, including the pre-sentence report. *See* N.T. Sentencing Hearing, 12/13/19, at 8. Under the

_____

[28] The court identified at sentencing six letters that it reviewed that were attached to Vanderslice's sentencing memorandum. *See* N.T. Sentencing Hearing, 12/13/19, at 51-53.

circumstances of this case, we disagree with Vanderslice that the court's sentence could only be the product of inflamed and biased passion, and we conclude that it was not the result of the trial court's unreasonable and arbitrary insistence upon expeditiousness. ***See Norton***, ***supra***; ***see also Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988) ("Where pre-sentence reports exist, [the appellate courts] shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Indeed, the sentencing court in the case *sub judice* was already acutely aware of the inflammatory facts prior to viewing the video *in camera*, and, as is the case with nearly all sentencing proceedings, the judge simply evaluated the nature of the evidence and the crimes at issue prior to imposing sentence.[29] ***See Commonwealth v. Walls***, 926 A.2d 957, 962 (Pa. 2007) (citing 42 Pa.C.S.A. § 9721(b)) (sentencing court required to impose individualized sentence, that is consistent with: (1) protection of public, (2) gravity of offense as it relates to impact on life of victim and on community, and (3) rehabilitative needs of defendant); ***see also Commonwealth v. Penrod***, 578 A.2d 486, 491-92 (Pa. Super. 1990) (citing 42 Pa.C.S.A. § 9721) ("[A]t the discretion of the trial court, the

---

[29] Although it was the sentencing judge's intention to only watch one video *in camera*, the court explained that it viewed two of the videos that were recorded because "[o]ne kept going[,] the screen [went] to black and there was no sound, and so the second one was shown. There was commentary by Mr. Vanderslice and questions answered by the victim. It was maybe a minute and a half long." N.T. Sentencing Hearing, 12/13/19, at 10.

- 17 -

Commonwealth may properly present live testimony of the victim and/or the victim's family or friends **as well as other evidence** such as photographs at sentencing **on the relevant sentencing issue** of "'*the gravity of the offense as it relates to the impact on the life of the victim and on the community.*'") (emphasis in bold added, emphasis in italics in original). We conclude that, simply because of the gravity of Vanderslice's crimes, there is no reason to believe that the court could not preside fairly and impartially. *See Commonwealth v. Bernal*, 200 A.3d 995, 999 (Pa. Super. 2018) (Pennsylvania Commonwealth judges are presumed "honorable, fair, and competent"). Moreover, the same can be said for the fact that the trial court imposed consecutive sentences, which aggregated to a term of years greater than that requested by the Commonwealth. *See Commonwealth v. Norris*, 375 A.2d 122, 123-24 (Pa. Super. 1977) (imposition of sentence rests solely within broad discretion of sentencing judge; appellate court will not find abuse of that broad discretion provided sentence is within statutory limits, unless sentence imposed is so manifestly excessive as to inflict too severe a punishment; sentencing judge has discretion to impose consecutive sentences for multiple convictions). In sum, there was no abuse of discretion in the trial court's denial of Vanderslice's continuance request. To the extent that Vanderslice's claim implicates a challenge to the discretionary aspects of his sentence, we address it below.

Vanderslice's final three claims on appeal implicate the discretionary aspects of his sentence. Appellants are not entitled to review of the

discretionary aspects of their sentence as of right. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004). Rather, our jurisdiction must be invoked via the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533-34 (Pa. Super. 2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1183, 1183 (Pa. Super. 2005)). The determination of whether there is a substantial question is made on a case-by-case basis, *see Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007), and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912-13 (Pa. Super. 2000). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018) (brackets omitted).

Here, Vanderslice filed a post-sentence motion for reconsideration of sentence, as well as a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance

of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f). **See** Appellant's Brief, at 14-15. Accordingly, we must now determine whether Vanderslice has raised a substantial question that his sentence is not appropriate under the Sentencing Code or is contrary to the norms which underlie the sentencing process.

In his Rule 2119(f) statement, Vanderslice claims that the trial court: (1) relied on impermissible factors when imposing the sentence; (2) viewed the "inflammatory graphic video prior to imposing sentence[, which] would have undoubtedly and understandably inspired bias and prejudice towards [Vanderslice]," Appellant's Brief, at 15; and (3) did not consider Vanderslice's mitigating history or circumstances.

We have previously found that a sentencing court's consideration of impermissible sentencing factors raises a substantial question. **Commonwealth v. Macias**, 968 A.2d 773, 776 (Pa. Super. 2009); **see also Commonwealth v. Allen**, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."). Additionally, a claim that a court imposed a sentence outside the guidelines while failing to consider mitigating circumstances has been found to raise a substantial question. **See Commonwealth v. Swope**, 123 A.3d 333, 340 (Pa. 2015) (holding claim of excessiveness coupled with claim trial court failed to consider rehabilitative needs and mitigating factors presents substantial question); **Commonwealth v. Samuel**, 102 A.3d 1001, 1007 (Pa. Super. 2014) (same). Conversely, as

described above, we have already found that it is, in fact, **a norm of the sentencing process** for the sentencing court to review trial evidence prior to imposing a sentence, *see supra* at 17-18, and therefore, we conclude that a claim that the court did so fails to raise a substantial question for our review. *See Sierra*, *supra*.  Also, with regard to challenges to the imposition of consecutive sentences, we have previously stated:

> [I]mposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court.  Long[-]standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.  **A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence.** We see no reason why a defendant should be afforded a volume discount for his crimes by having all sentences run concurrently.
>
> **However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question.**  When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

*Commonwealth v. Zirkle*, 107 A.3d 127 (Pa. Super. 2014) (emphasis added; citations, quotations, brackets omitted).

Here, Vanderslice pled guilty to a fraction of the crimes with which he was initially charged and that were supported by the factual recitation placed into the record by the Commonwealth at the plea hearing.  Additionally, we note that all seven of the crimes that Vanderslice pled guilty to were graded

as felonies, and the majority of those were graded as felonies of the first degree. In consideration of these circumstances, and in light of the criminal conduct at issue, we conclude that the trial court's aggregate sentence was not so manifestly excessive that it raises a substantial question. *See Zirkle*, *supra*. Thus, we will only address the merits of Vanderslice's discretionary aspects of sentencing challenges regarding the court's consideration of impermissible factors, as well as its failure to consider Vanderslice's mitigating circumstances.

First, Vanderslice argues that the trial court impermissibly relied on pending criminal charges and unproven criminal conduct. Specifically, Vanderslice contends that:

> the trial court considered [his] pattern of violence towards women in another pending criminal case and a prior protection from abuse order [(PFA)]. The court discussed how the instant case was far from an isolated incident[,] drawing the similarities between the case *sub judice* and the other pending criminal case involving [] Kelsea Manz, [who is Vanderslice]'s ex-paramour.

Appellant's Brief, at 18. Vanderslice relies on our Supreme Court's decision in *Commonwealth v. Bethea*, 379 A.2d 102 (Pa. 1977), and our decision in *Commonwealth v. Stufflet*, 469 A.2d 240 (Pa. Super. 1983), for the proposition that, "if it reasonably appears from a review of the entire record that the sentencing court may have relied in whole or in part upon an impermissible consideration, the sentence is invalid and must be vacated." Appellant's Brief, at 15.

- 22 -

Second, Vanderslice claims that the court failed to consider his mitigating evidence that: he had no relationship with his biological father until he became an adult; his stepfather was killed with his son in a tragic motorcycle accident; he recalled finding his sister dead in her crib after she died of meningitis; he became a father at fourteen years old, his girlfriend was eighteen years old at the time, and the victim in this case is the child of that union; he was a special education student who struggled with school and eventually dropped out in the ninth grade at the age of sixteen; he suffered from Persistent Depressive Disorder, Generalized Anxiety Disorder, Stimulant Use Disorder, Opiate Use Disorder, and Borderline Personality Disorder; he attempted suicide by hanging (among other attempts) and was involuntarily committed to Norristown State Hospital, where he was prescribed anti-psychotic and anti-depressive medications, and later was re-hospitalized for suicidality and psychotic symptoms at the Horsham Clinic; and "the instant offense took place approximately a week after [Vanderslice] signed a 72-hour notice to be released from his (second) inpatient stay at the Horsham Clinic." Appellant's Brief, at 53.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

- 23 -

judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa. Super. 2005) (citing

***Commonwealth v. Mouzon***, 828 A.2d 1126, 1128 (Pa. Super. 2003)).

A sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime."

***Commonwealth v. Edwards***, 194 A.3d 625, 637 (Pa. Super. 2018) (quoting

***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007)).

Moreover, this Court's review of the discretionary aspects of a sentence is governed by 42 Pa.C.S.A. §§ 9781(c) and (d). ***Commonwealth v. Dodge***, 77 A.3d 1263, 1274 (Pa. Super. 2013). Section 9781(c) provides, in relevant part:

(c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

\* \* \*

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c)(3). Subsection 9781(d) requires that, in reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

We have previously found that, "[i]t is not enough that a trial court simply *entertained* impermissible evidence in its deliberations. A court is 'ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence.'" ***Commonwealth v. Smithton***, 631 A.2d 1053, 1057 (Pa. Super. 1993) (quoting ***Penrod***, ***supra*** at 491) (emphasis in original). "Thus, a sentence must be vacated only where 'it reasonably appears from the record that the trial court *relied* in whole or in part upon such an impermissible factor.'" ***Id.*** (quoting ***Bethea***, ***supra*** at 107) (emphasis in original; brackets omitted).

Moreover, "[a]lthough a sentencing judge must state his or her reasons for the sentence imposed, a discourse on the court's sentencing philosophy is not required[; however, t]he court must explain any deviation from the sentencing guidelines." ***Commonwealth v. Simpson***, 829 A.2d 334, 338 (Pa. Super. 2003) (internal citations, quotation marks, and ellipsis omitted). Additionally, "[w]here the court's sentencing colloquy shows consideration of the defendant's circumstances, prior criminal record, personal characteristics and rehabilitative potential, and the record indicates that the court had the benefit of the pre[-]sentence report, an adequate statement of the reasons for sentence imposed has been given." ***Commonwealth v. Brown***, 741 A.2d

726, 735 (Pa. Super. 1999) (citations and quotation marks omitted). ***See also Devers***, ***supra***.

Prior to imposing sentence on Vanderslice, the court stated its reasons in support of the sentence for the record:

> Let me just let you know that, obviously, I've considered your remarks. I've actually made a few notes here. I want to tell you the other material that I've considered, I think I've reviewed this in the beginning, but we'll make sure that it's clear: I reviewed the Commonwealth's Sentencing Memorandum; I received a report from Dr. Bruce Mapes, who is both a member of [SOAB] and was the reviewer of this defendant []; I reviewed the Chester County Adult Probation and Parole Department Pre[-]sentence Investigation [Report (PSI)], [which] has some attachments[] includ[ing] an affidavit of probable cause for this crime, criminal history information, a report from a Randee[] Brant[] who is an investigator with [SOAB], and in that[ history, Brant] recounted an interview with Darcy Carfagno, who is [Vanderslice]'s mother; I reviewed the employment information; the affidavit of probable cause; **I reviewed all of the defendant's [sentencing] memorandum**, including the various letters that were marked as [] D-2 through D-6; and **I reviewed Dr. Atkins' report** which was attached to the [sentencing] memo[random] as ["]Exhibit A["]. **I have listened very carefully to Dr. Atkins' testimony. I took copious notes.** I've also listened to the testimony today from Corporal Holloway.
>
> I'm going to discuss, first, what I perceive to be aggravating factors, and they are in my notes here. The most aggravating factor is that the victim is the defendant's biological daughter who was 16 at the time of this offense. It is hard for me to fathom the amount of evil or the level of monstrosity that would cause a father to commit these crimes on his own daughter. It's not to minimize that these crimes should not be committed on anyone. That, in and of itself, in the opinion of this [c]ourt, should take each and every one of these crimes well beyond the aggravation factors, the aggravation range.
>
> **The defendant claims that he does not remember the acts** which have been [a]scribed to him. **Whether it's due to a psychotic episode**, which I kind of use his words and certainly

**the words that Dr. Atkins used**, **or drug use during an attack**, and [Vanderslice] asks me to accept that as true and Dr. Atkins indicates why he did accept it as true. I cannot. **The reason I consider this an aggravating factor is that he began a course of conduct well before this day**, **researched on the Internet child pornography, father/daughter incest pornography, and was eventually able to find some website which would pay him if he could obtain these**. I note in the Commonwealth's sentencing memorandum there's information that [Vanderslice] told family and friends that he had hoped to get a lower plea, certainly simply because the victim wouldn't want to testify, and that he would not accept a negotiated plea deal, not that he had to, but he didn't want to do so because it's not as bad as killing someone. On every level of humanity, what you did to your daughter was worse than if had you killed her[. F]or 24 hours a day, 365 days a year for the rest of this young lady's life[, s]he will never get this out of her mind.

**I don't know whether you have remorse. You have just expressed that you are sorry. I have difficulty in determining whether you're sorry you got caught, whether you're sorry you were arrested, or whether you're sorry about the potential sentence**, but I accept it at face value.

**You do have no prior record score. You did have a PFA against you in Montgomery County in which the allegation at that time was, and I accept it as an allegation at this point, that you sexually assaulted** [**Ms. Manz**] **at gunpoint**. [] Later **you were charged with contempt for violating that order**. And then **you were sentenced to some period of incarceration for that contempt**. As I'm sure [defense counsel] has advised you, you're on my trial list at the moment for **another case involving** [**Ms.**] **Manz**, **these facts that are allegations**. **And I don't accept them as pr**[**oven**]**, but I cite them here on the record to refute the position Mr. Vanderslice has taken that this was an isolated incident**.

As I understand the allegations in that case, you got into an argument with a woman, you drove her and a child around, when the woman became frightened and the car stopped, she tried to break free and ran. The allegations, not proven, are that you chased her down, you tackled her, you threw her over your shoulder, pulled her back into the vehicle, and then sped away with her four year old child inside. I will recount later the

similarities of facts that I found both from what you accepted in your guilty plea and what happened in this case.

**You blame your drug use on your mental health condition. I don't see how that's a mitigating factor at all.** There are many, many people known to everyone in this room who suffer from ADHD, many who suffer from depression, may have other mental health issues that did not take street drugs, did not kidnap, torture[,] and rape their daughter. These indignities perpetrated upon this young woman are [] aggravating factors in and of themselves. In committing these crimes[,] you took advantage of your daughter's trust, of your daughter's hope, of your daughter's dream for some relationship with her biological father.

[Police discovered] images [] on your phone regarding child sexual exploitation, child erotica, implied incest, bondage, [and] sadomasochism[.] And I think they require[,] not only the consideration of some of the enhancements and requests for enhancements, but certainly that those enhancements under the [Sentencing] Code could ever contemplate such a horrible crime, it might have been something like this. So[,] **whether it's your mental health issues or your use of drugs, you obviously cannot control yourself**. **You have exhibited, in the PFA allegations, violence towards women; the n[e]w assault case, it reveals approach of violence towards women**; and then in this case, first you get her in the car, then you supply her and force-feed her methamphetamines, strip her of her clothes, when she fights back and attempts to escape, you chase her down, you drag her back to the car through the woods by her hair, and you continue these assaults. You used seatbelts to physically restrain her from any further [escape] attempts. **You photographed and you videotaped the four sexual acts with the intent of selling these images for your own financial gain. In and of itself, these would inflict such pain and degradation upon this young woman that they are clearly evidence of an aggravating factor.**

**And then you tell her that you plan to include your four-year-old son in future videos. Once you do, and you're eventually caught, you brag about it**, "I just put her through a night of hell." Aren't you special? **You planned these crimes for a period of time before committing the assault.** You spent time on the websites depicting the type of abuse you forced on the victim. When you heard and learned that the[ websites] paid for images, you planned to create the same in order to sell

them for financial gain. And you manipulated this young woman into believing that you wanted to spend time with her. All you wanted to do was commit crimes upon her. And as to the[ assertion that] this was a one-time isolated incident, **you warned** [Ms.] Manz, **your ex-paramour, that you planned on doing something so horrific that it would permanently turn her against you.** All of these crimes are based on separate and distinct criminal acts.

**I'm allowed to consider the impact and the effect on the victim and the victim's statement.** Yes, you pled guilty and prevented her from coming forward [and] having to testify. I'm not going to conclude why you pled guilty. [I]t seems unlikely that you did that thinking of your daughter, and perhaps [the Commonwealth's theory] is correct, you thought only of yourself. But, none[]the[]less, **it is a fact that you pled guilty and prevented any testimony at trial.**

The impact on this young woman, the memories, reliving the assault, living with the knowledge that the assault has been recorded and has now had to be viewed by strangers, whether they were police officers, detectives, attorneys, or even the [c]ourt. This young woman deserves to know that she will be safe. And while she may have the many demons which she will have to deal with throughout her life, the circumstances surrounding this crime are so aggravating that the one demon she should not have to deal with is the worry that she will need to interact with you again.

I want to explain to counsel and to you that the Superior Court has expressed concern to sentencing judges that we should be reluctant to run sentences concurrently by way of habit or tradition because **criminals should not receive a volume discount for their separate criminal acts.** The support for the imposition of consecutive sentences on multiple crimes [is] the case of **Commonwealth v**[*.*] **Mouzon**[.[30]   I]n that particular case[,] a defendant's unwillingness to come forward with remorse and [] the planning of those particular crimes were with an intent to terrorize. In that case it was robberies. Here[,] terror is almost too soft a word.

---

[30] **See Commonwealth v. Mouzon**, 812 A.2d 617 (Pa. 2002).

In this case the defendant repeatedly raped this child, filmed, photographed multiple sexual assaults, and yet[,] you have pled guilty only to one count. In [**Commonwealth v. Wojciechowski**,[31]] the Superior Court opined that it's unthinkable that a woman, once having been raped, is in the position where her attacker can abuse her in any other fashion without further sanctions from the [c]ourt for a separate and distinct crime. He cannot escape criminal liability merely because he chose to subject the victim to every possible kind of aggressive, physically abusive[,] sexual behavior in his depraved arsenal. And while that case[] may well apply here[,] I'm well aware of the Commonwealth's recommendations. And, in sum, they ask for a sentence of aggravated and a term for aggravated in the terms of 38 to 76 years. **And I'm aware that the defense has raised a number of issues which it believes to be mitigating factors, such as the untreated mental health disorders, et cetera. The defense has argued to us that there's a low likelihood of recidivism.** There will be as a result of this sentence.

**I've considered these factors that the defendant[ has] raised, and I do not find them in the least bit persuasive. I have difficulty ascribing credibility that the defendant has no memory of the events. He went to great lengths to plan this vicious attack on his daughter and his behavior during the course of the attack**, moving the car, moving it to a straight spot, walking through the woods, walking down the path, finding the other house, et cetera, indicates a level of planning and detail. And as I noted earlier, while **they are mere allegations** in the other case, **this attack does not appear to be an isolated incident in terms of approach towards women, similar, albeit unproven charges at this point**, that he trapped a woman in a car, when she escaped he pursued her and violently put her back in the vehicle. While in Miss Manz's case[,] it clearly is not as horrific as [in] this case, **it reveals a pattern, a pattern from which this young woman, her family, and the Commonwealth of Pennsylvania needs to be protected**.

Of particular note[,] as to this issue of protection, I read through each of the interviews and the letters that were provided by the defendant, Mrs. Carfagno in her interview that's recounted[,] has difficulty expressing belief that her son did this; and the letter that

---

[31] **See Commonwealth v. Wojciechowski**, 426 A.2d 674 (Pa. Super. 1981).

was included from Ruth Jalkowski marked as Exhibit D-6, chillingly writes: "I have not been able to match any of this with Shawn. It just isn't in his character. He may have pled guilty, but he didn't do it." I read that over and over, and it was everything I could do, Mr. Vanderslice, not to become physically ill.

N.T. Sentencing Hearing, 12/13/19, at 103-12 (emphasis added; unnecessary capitalization omitted).

In its supplemental Rule 1925(a) opinion, the trial court explained its sentence and offered the following analysis:

Upon review of the sentencing transcript, the undersigned acknowledges making reference to these unproven allegations asserted in the pending case. However, it must also be made clear that the undersigned acknowledged that the facts were just that—allegations—and they were considered as such. The sentencing court raised the allegations, part and parcel, to demonstrate that the acts to which [Vanderslice] pleaded guilty were not the product of an isolated incident as [he] claimed, but[, when] combined with the PFA violation in Montgomery County, the allegations of the pending charges, and the facts of the instant case, [Vanderslice] had demonstrated a pattern of violence toward women. This pattern could have been discerned without reference to the pending allegations.

Because there were so many other factors that the sentencing court considered when imposing the lengthy period of incarceration, **the allegations related to the pending case against [Vanderslice] were entertained, but not relied upon by the sentencing court**. As a result, reference to such allegations was not an error of law and, therefore, the sentence need not be vacated.

Trial Court Opinion, 8/24/20, at 8 (emphasis added).

Here, upon evaluating the issue of the sentencing court's consideration of impermissible evidence, we agree with the trial court's analysis. Our review of the record reveals that the sentencing court merely **entertained** the unproven pending charges, in connection with the previous PFA and contempt

thereof, as evidence of a pattern of violence against women, *see* N.T. Sentencing Hearing 12/13/19, at 106, which refuted Vanderslice's and Dr. Atkins' claim that Vanderslice's crimes were an isolated event. *See Smithton*, *supra*. We conclude that the court's singular comment that the facts of Ms. Manz's case further established "a pattern of violence against women" from which the victim needed to be protected, *see* N.T. Sentencing Hearing, 12/13/19, at 112, referenced earlier discussion of that same pattern, which was made within the context of pertinent and permissible evidence, *i.e.*, Vanderslice's previous sentence of confinement for violating the terms of a PFA involving Ms. Manz. We find that **because the court did not rely on the impermissible evidence**—*i.e.*, the pending unproven charges—as a basis for aggravation or enhancement of sentence, or for the purpose of discerning that the victim required protection from Vanderslice, *see id.* at 109-110, **the court did not abuse its discretion in entertaining the unproven charges** against him. *See also Commonwealth v. Petras*, 534 A.2d 483, 488 (Pa. Super. 1987) ("[S]o long as the sentencing court is aware that no arrest or conviction resulted, such information may properly be considered by a sentencing court even where appellant has not opened the door. 'Prior connections, of whatever nature, with law enforcement authorities are unquestionably among the circumstances to be scrutinized' in determining the appropriate sentence.").

Finally, our review of the sentencing transcript reveals that, contrary to Vanderslice's claim, the sentencing court did consider his mitigating

circumstances, yet found them to be not credible or unconvincing. We find that his claim that the court gave no real consideration to his mitigating factors is actually a request for this Court to re-weigh the sentencing factors, which we may not do. *See Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012) (citing *Macias*, *supra*.) ("The weighing of factors under 42 Pa.C.S.[A.] § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors.") (ellipsis and brackets omitted). Additionally, the sentencing court stated that it read Vanderslice's PSI prior to the hearing. *Id.* at 8. Therefore, we may presume that the sentencing judge was aware of and weighed Vanderslice's mitigating circumstances at sentencing. *See Devers*, *supra*.

Consequently, Vanderslice has not shown that his sentence is unreasonable; thus, his discretionary aspects of sentencing claims fail. *See* 42 Pa.C.S.A. § 9781(c)(3).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/21

- 33 -